Q. Did you tell Mr. Matthews that you needed help?

A. ...I don't know that I did. I don't know that I didn't.

Q. Did you suggest --

A. I felt that's what I was asking him for, whether I verbally

Q. Well, did you verbally tell him that you were -- did you tel

A. No....


Q. ...My specific question is, for whatever reason, okay, did y

A. No, sir.

The next day, Taylor sent Matthews an electronic mail ("E-Mail") messa

    I THOUGHT AND WORRIED ABOUT OUR CONVERSATION ALL THE WAY HOME LAS

    BRUCE, I HAVE BEEN UNCHARACTERISTICALLY NEGATIVE; I GUESS THAT I
    AND I MUST ADMIT THAT WHAT I GAVE YOU WERE LOW AND WHEN THE MASK

    BRUCE, I BELIEVE THAT WE (THE EL PASO AGENCY AND ME) CAN HAVE A PO
    WOULD RECRUIT 7 PEOPLE THIS YEAR BEFORE JUNE 30.

    YOU GAVE ME UNTIL JUNE 30TH TO PROVE TO YOU SOME THINGS THAT I AM

On June 24-25, 1993, Matthews met with Taylor in El Paso. Matthews of

terminated. In a subsequent telephone conversation, Taylor notified Matthe

On July 1, 1993, Taylor received from Matthews a letter of understanding

the letter stated the following:

    I wish to share with you the standards which must be met by year en
    in the agency for the 1993 are unsatisfactory.


    These key performance results must be met by December 31, 1993 fo

    *    Personally recruit at least three additional 01 agents, for

    *    One of the 01 agents must end the year at Agency Club level

    *    Two of the 01 agents must end the year at Level I and have b

    *    Total production from the 01 class must exceed $43,000 ICCs.

    *    Total agency production must exceed 4290,000 ICCs.

    *    Unit cost must be at or lower than 72 (Excludes agency manag

    We will look at the progress you are making at the end of the thi

    You have the talent to not only meet these requirements, but exce

42 U.S.C. § 12112. "Unless expressly stated otherwise, the standards applie

§ 504, as amended, 29 U.S.C. § 794).

In **Diagle v. Liberty Life Insurance Co.**, we set forth the elements of,

A plaintiff may establish a claim of disability discrimination by
93 S. Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), may also be utilized.
or she is qualified for the job; (3) he or she was subject to an

**Diagle v. Liberty Life Insurance Co.**, 70 F.3d 394, 396 (5th Cir. 1995) (int

Taylor argues that summary judgment was inappropriate because genuine i

words to invoke the employer's duty to provide reasonable accommodation.  Ta

bipolar disorder:

1.    "I asked Mr. Matthews, specifically, for help."

2.    "What I'd ask you to do is to talk to the doctors in the Principal
      about it."

3.    "I asked for a reduction in my objectives."

4.    "I asked for a lessening of the pressure."

Taylor argues that his statements to Matthews raise a genuine fact issue as

Taylor additionally argues that once he revealed his disability to Matthe

that a reasonable accommodation is not possible in a particular situation.  T

Principal Mutual argues that Taylor's statements to Matthews did not pu

fact, "all right."  Principal Mutual argues that the claimed physical or men

the employer must accommodate, but rather any limitations or restrictions c

that it gave Taylor an accommodation in the form of additional time to meet

Principal Mutual asserts that, "having reasonably accommodated Taylor, Prin

The ultimate issue presented to this Court is whether Taylor presented

42 U.S.C. § 12101, et seq, by not making reasonable accommodations to a phy

prima facie case of ADA discrimination.  For the following reasons, we affi

***Failure to Identify Limitation***

Under the ADA, an actionable disability means, in relevant part, a phys

show that the employer knew, or should have known, of such employee's substa

an employee's disabilities, limitations, and possible accommodations.[9]  In t

that Taylor failed to adduce summary judgment evidence which would allow a r

For the foregoing reasons, the judgment entered by the district court